UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOAN MARIE MURRAY-RUHL,
Personal Representative of the Estate of
MICHAEL DEAN MURRAY, Deceased,

                                                CASE NO. 04-72615
      Plaintiff,                       HON. LAWRENCE P. ZATKOFF

v.

COUNTY OF SHIAWASSEE, JON
WILSON, Individually and as Sheriff of
the County of Shiawassee, THOMAS
PASSINAULT and JASON JENKINS,

      Defendants.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on October 4, 2005

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is before the Court on Defendants Thomas Passinault's and Jason Jenkin's Motion for Summary Judgment. Plaintiff has responded and Defendant has replied to the response. In addition, Plaintiff has filed a response to Defendant's reply. Because Plaintiff's additional response is not permitted by E.D. MICH. LR 7.1(c)(1)(A), the Court HEREBY STRIKES Plaintiff's August 31, 2005 Response.

The Court finds that the facts and legal arguments are adequately presented in the parties'

papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Defendants' Motion for Summary Judgment is GRANTED.

## II. BACKGROUND

On September 6, 2003, between 2:30 and 3:00 a.m., twenty-year old Michael Murray was coming home from a party. The twenty-year old Murray had offered to drive Rebecca Rodriguez home from the party. When Murray started his Chevy S-10 pick-up truck, located in the parking lot of a bar at Lansing and Durand roads, Murray noticed a sheriff's department vehicle on Lansing Road. Because Murray had been drinking in violation of his parole, he wanted to avoid any contact with the police. Accordingly, Murray drove from the parking lot and pulled behind a row of buildings adjacent to the bar. Murray switched off the engine, shut off the lights, and then he and Rodriguez ducked down in the truck.

Defendants Thomas Passinault and Jason Jenkins, Shiawassee County Sheriff's Deputies, spotted Murray's vehicle from their patrol car as Murray pulled out of the bar parking lot. Believing the truck was driving erratically, Defendants' suspicions were aroused and they followed the truck. After Murray' truck disappeared briefly from their sight, Defendants observed the truck parked with its lights off behind a nearby barn. They pulled up behind the truck, blocking it in from behind, and began searching for the truck's driver on foot, believing that the driver had fled the truck. As Rodriguez explained in her deposition, she then heard Defendants walk past the truck as she was ducked down inside the truck. *See* Defendant's Brief, Exhibit D, at 38.

As Defendants continued to search, Murray started his truck and accelerated forward in the

direction of Deputy Passinault. Rodriguez later explained in her deposition that driving straightforward was the only way out of the area. *See* Plaintiff's Brief, Exhibit 1, at 51. Deputy Passinault drew his weapon and ordered the vehicle to stop. When it continued towards him,[1] he opened fire.

All told, Deputy Passinault fired twelve rounds at the truck. *See* Michigan State Police Lab Report, Exhibit K. He continued firing as the truck passed him. Two or three of the rounds struck Murray, killing him. The truck eventually came to a stop in a ditch down the road.

Plaintiff Joan Marie Murray-Ruhl filed the instant § 1983 suit on behalf of her son, decedent Michael Murray, against Defendants Thomas Passinault, Jason Jenkins, Shiawassee County, and Shiawassee County Sheriff Jon Wilson. Defendants Shiawassee County and Sheriff Jon Wilson were dismissed by stipulated order on September 15, 2005. By the present motion, Defendants Passinault and Jenkins seek qualified immunity.

### III. LEGAL STANDARD

**A. Summary Judgment**

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring

---

[1] Plaintiff admits in her Complaint that Murray's truck came within 8 feet of Deputy Passinault. *See* Plaintiff's Complaint, ¶ 21. Deputy Passinault has asserted that the truck came significantly closer. For purposes of this Motion, the Court accepts Plaintiff's version of the facts.

3

the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The non-moving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

**B. Qualified Immunity**

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "The standard is one of objective reasonableness, analyzing claims of immunity on a

fact-specific, case-by-case basis to determine whether a reasonable official in the defendants' position could have believed that his conduct was lawful, in light of clearly established law and the information he possessed." *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995). Moreover, "[if] officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 349 (1986) (Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law.").

"The defendant as the movant in a motion for summary judgment must show that no genuine issues of material fact remain that would defeat his claim of qualified immunity. The plaintiff, however, carries the burden to allege and prove that the defendant official violated a clearly established right of which a reasonable person would have known." *Pray v. City of Sandusky*, 49 F.3d at 1158 (citing *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir.1994)). "Thus, when a defendant moves for summary judgment based on qualified immunity, the plaintiff must: 1) identify a clearly established right alleged to have been violated; and 2) establish that a reasonable officer in the defendant's position should have known that the conduct at issue was undertaken in violation of that right." *Id*.

## IV. ANALYSIS

### A. Use of Deadly Force

The Court recognizes that the loss of a child is a tragedy which is every parent's worst nightmare. It is also a loss for which no law provides true recourse. The central question before the Court is whether Defendant Thomas Passinault acted reasonably when he shot and killed Plaintiff's son, the decedent Michael Murray, on September 6, 2003. The Supreme Court has explained when

the use of force is reasonable:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake. . . . . Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham v. Connor*, 490 U.S. 386, 396-97 (1989) (citations omitted). The Supreme Court further explained the permissibility of using force to stop a fleeing felon in *Tennessee v. Garner*:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Tennessee v. Garner*, 471 U.S. 1, 7 (1985). The Supreme Court has also explained that the "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . ." *Graham v. Connor*, 490 U.S. at 396-97. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Id*.

On the night of September 6, 2003, Deputy Passinault made a split-second decision to use lethal force in order to protect himself and Deputy Jenkins from a truck which was accelerating in his direction, which had violated his order to stop, which came within eight feet of striking Deputy Passinault, and which was escaping from the scene. The Court finds that Deputies Passinault and

Jenkins acted reasonably under the circumstances.

**B. Qualified Immunity**

By the present motion, Defendants have asserted the defense of qualified immunity. In order to defeat Defendant's request for qualified immunity, Plaintiff must (1) identify the violation of a clearly established constitutional right and (2) establish that a reasonable officer in the defendant's position should have known that the conduct at issue was undertaken in violation of that right. *See Pray v. City of Sandusky*, 49 F.3d at 1158. Regarding the former requirement, Plaintiff asserts that Murray's right to be free from excessive force and unreasonable seizure was "clearly established" by *Robinson v. City of Memphis*, 340 F.Supp.2d 864, 868 (W.D. Tenn. 2004). *See also Adams v. Metiva*, 31 F.3d 375, 386-387 (6th Cir.1994). Plaintiff's reliance on *Robinson* is misplaced. In *Anderson v. Creighton*, the Supreme Court explained:

> that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citation omitted). *See also Saucier v. Katz*, 533 U.S. 194, 201-202 (2001) (The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition.")

Other than the broad general proposition of *Robinson* that it is constitutionally unlawful to use excessive force, Plaintiff has not offered the Court any cases showing that Defendants violated a "clearly established" right. In contrast, Defendant has directed the Court to numerous cases where qualified immunity was granted in factual scenarios similar to the present case.

In *Smith v. Freeland*, 954 F.2d 342 (6th Cir. 1992), the Sixth Circuit upheld the grant of qualified immunity to a police officer who shot and killed a fleeing suspect. In *Smith*, a suspect fled in his car from police for over two miles before being cornered in a neighborhood. In order to escape, the suspect rammed the police cruiser and zoomed around the police car. Despite not being in any continuing danger, the police officer fired one shot at the fleeing suspect, killing him. Relying on *Graham v. Connor's* admonition against the 20/20 vision of hindsight, the Court determined that the officer's action was reasonable:

> This passage carries great weight in this case, since all parties agree that the events in question happened very quickly. Thus, under Graham, we must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes "reasonable" action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.

*Id*. at 347.

The Sixth Circuit addressed another similar factual scenario in *Scott v. Clay County*, 205 F.3d 867 (6th Cir. 2000). In *Scott*, the plaintiff was a passenger in a car being driven by her husband. After failing to stop at an intersection, plaintiff's husband attempted to escape from police by driving at high speeds. Eventually, the fleeing vehicle skidded off the roadway and crashed into a guardrail. The pursuing police cruiser then struck the vehicle from the rear and it came to a stop. The police officer exited the cruiser, pulled his sidearm, and began moving towards the now-stationary vehicle. The vehicle accelerated forward toward the officer, forcing him to leap out of its way in self-defense. The officer then opened fire as the vehicle attempted to leave the scene, firing five rounds toward the vehicle and four rounds towards its tires. Two of the rounds hit the plaintiff as she sat in the passenger seat of the fleeing vehicle. Despite the fact that the officer was

no longer in personal danger from the vehicle, the Court concluded that his actions were reasonable and upheld the grant of qualified immunity to the individual officers in the case. *Id*. at 878.

The Supreme Court granted qualified immunity to a defendant police officer in *Brosseau v. Haugen*, 534 U.S. 194 (2004). In *Brosseau*, a police officer responded to a 911 call regarding a fight and arrive at the scene to find a man with an outstanding felony warrant. The suspect ran to his vehicle and attempted to leave the scene. The officer arrived at the vehicle, pointed her gun at the suspect and ordered him out of the vehicle. When the suspect refused, the officer struck the driver's side window until it shattered and attempted to take the keys from the suspect. Nevertheless, the officer's attempts failed and the suspect began driving away. At this point, the officer shot the suspect in the back. The Court concluded that the officer's actions did not violate "clearly established" Fourth Amendment law, and that instead the actions fell in the "hazy border between excessive and acceptable force." *Id*.

Plaintiff has failed to distinguish the above cases and has failed to demonstrate any similar factual scenarios where the Court denied qualified immunity to the defendant police officers. Though the Court recognizes that the factual scenarios in *Smith, Scott,* and *Brosseau* are not identical to the case before it, the burden is Plaintiff's to show that Defendants violated a "clearly established" constitutional right. The Court finds that Plaintiff has failed this burden, and that qualified immunity should be granted to Defendants Passinault and Jenkins.

9

## V. CONCLUSION

For the above reasons, the Court HEREBY GRANTS Defendants' Motion for Summary Judgment.

IT IS SO ORDERED.

                                        s/Lawrence P. Zatkoff
                                        LAWRENCE P. ZATKOFF
                                        UNITED STATES DISTRICT JUDGE

Dated:  October 4, 2005

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on October 4, 2005.

                                        s/Marie E. Verlinde
                                        Case Manager
                                        (810) 984-3290